

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) **THE CHEROKEE NATION,** ) | **FILED** |
| ) | |
| Plaintiff(s) ) | JAN **1 3** 2014 |
| vs. ) | Phil Lombardi, Clerk |
| ) | U.S. DISTRICT COURT |
| (2) **S.M.R. JEWELL,** *in her official capacity as* ) | |
| **Secretary of the Interior, U.S. Department of the** ) | Civil Action No. _____ |
| **Interior,** and ) | |
| ) | **1 4 CV - 0 1 9 GKF - FHM** |
| (3) **KEVIN WASHBURN,** *in his official capacity* ) | |
| *as* **Acting Assistant Secretary for Indian Affairs** ) | |
| **U.S. Department of the Interior,** and ) | |
| ) | |
| (4) **ROBERT IMPSON,** *in his official capacity as* ) | |
| **Eastern Oklahoma Regional Director, Bureau of** ) | |
| **Indian Affairs,** ) | |
| ) | |
| Defendant(s) ) | |

## COMPLAINT
### (Declaratory and Injunctive Relief)

The Plaintiff Cherokee Nation (the "Nation"), by and through its counsel, hereby alleges as follows:

### NATURE OF THE ACTION

1.     The Cherokee Nation, a federally recognized Indian Tribe, brings this action against Defendants, Secretary of the Department of the Interior (the "Department" or "Secretary"), Assistant Secretary for Indian Affairs of the Department of the Interior ("ASIA") and the Eastern Oklahoma Regional Director ("Regional Director"), Bureau of Indian Affairs ("BIA"), seeking injunctive and declaratory relief from the Regional Director's May 24, 2011 administrative agency decision ("2011 Decision").

2.     The 2011 Decision approved an amended trust acquisition request for the United Keetoowah Band of Cherokee Indians (UKB) which asked that the United States take land

Fees Pd

owned by UKB in trust for the United Keetoowah Band of Cherokee Indians in Oklahoma Federally-chartered Corporation (UKB Corporation).

3.      The Cherokee Nation filed and pursued a timely appeal of the 2011 Decision in the Interior Board of Indian Appeals ("IBIA) under Docket No. 11-122.

4.      On January 6, 2014, the IBIA entered an Order Dismissing Appeal.  *See* Order Dismissing Appeal, 58 IBIA 153 (attached as Exhibit 1 to this Complaint).  The effect of this dismissal is to make  the 2011 Decision final and to permit the Secretary of the Interior to take 76 acres of land, located within the former reservation and historic treaty territory of the Cherokee Nation, into trust for the UKB Corporation, a corporation aligned with and owned by a tribe foreign to the Cherokee Nation, the UKB.

5.      The 2011 Decision is contrary to an unbroken line of prior Departmental rulings and to a series of decisions by this Court.  The agency's decision is also contrary to section 5 of the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. § 465, which bars the Secretary from acquiring land in trust for any entity that was not "under federal jurisdiction" at the time the IRA was enacted in 1934." *See Carcieri v. Salazar*, 555 U.S. 379 (2009).

6.      Because the Department revised a section of regulations governing decisions by the Secretary to approve or deny applications by Indian tribes to acquire land in trust and eliminated the 30-day waiting period after notice for the Secretary to acquire land into trust, the dismissal of the Cherokee Nation's appeal permits the Secretary to now acquire the 76-acres in UKB's application into trust with no notice or time for judicial appeals of the Secretary's land-into-trust decision.  *See* 78 Fed. Reg. 67928 (Nov. 13, 2013) (to be codified at 25 C.F.R. pt. 151).

7.      The 2011 Decision found, *inter alia,* that "[i]n his 2008 Decision, the Assistant secretary concluded that the UKB is a successor in interest to the 'historic Cherokee Nation.'  In

his 2010 Decision, the Assistant Secretary withdrew his conclusion concerning the status of the UKB as a successor in interest to the 'historic Cherokee Nation,' stating that his prior conclusion on this issue was unnecessary for purposes of his decision.  Regardless, in his 2009 Decision, the Assistant Secretary found that he need not decide whether this is an on-reservation or off-reservation acquisition because the result is the same under both analyses.  Because the interest of the UKB in the 'historic Cherokee Nation,' if any, has not been finally determined, we have considered herein the off-reservation factors." *See* 2011 Decision Letter, p. 9 (Exhibit 2 to the Complaint).

8.    The Regional Director's "successor in interest" conclusion is contrary to an unbroken line of prior Departmental rulings and to a series of decisions by this Court.  This conclusion, however, was the basis for the Regional Director's unlawful decision to approve the acquisition of 76 acres of land (the "Subject Tract") located within the last treaty boundaries of the Nation (the "Nation's Treaty Territory") into trust under section 3 of the Oklahoma Indian Welfare Act, 25 U.S.C. § 503 ("OIWA") for the use and benefit of the United Keetoowah Band (the "UKB") Corporation.

9.    Further, the Regional Director's conclusion that the Secretary possesses "implicit" general authority to acquire land in trust for a tribal corporation organized under section 3 of the Oklahoma Indian Welfare Act of 1936 ("OIWA"), 25 U.S.C. § 503 (*See* 2011 Decision Letter, p. 4 (Exhibit 2 to the Complaint)), even though the OIWA's implementing regulations (which also implement the Indian Reorganization Act, 25 U.S.C. §461, et seq.) expressly prohibit the Secretary from acquiring land in trust for a corporation, except under circumstances not present here, is illegal.

3

10.     The 2011 Decision is also contrary to section 5 of the Indian Reorganization Act of 1934 ("IRA"), 25 U.S.C. § 465, which bars the Secretary from acquiring land in trust for any entity that was not "under federal jurisdiction" at the time the IRA was enacted in 1934." *See Carcieri v. Salazar*, 555 U.S. 379 (2009).

11.     Finally, regardless of whether the Regional Director was approving taking the Subject Tract in trust for the UKB or the UKB Corporation, the Department/Regional Director failed to follow the Department's own regulatory guidelines (25 C.F.R. §§ 151.1 et seq.) in violation of his duty as set forth in 25 U.S.C. § 465.

12.     The 2011 Decision is unsupported by statutory or regulatory authority, was made without the consent and over the objection of the Cherokee Nation, and is in derogation of the Nation's Treaty-protected rights.  For these and other reasons, this Court should issue an order declaring the Department's/Regional Director's action to be arbitrary and capricious, an abuse of discretion, contrary to law, and, as such, in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (the "APA") and enjoining the Department from taking the Subject Tract into trust pending a final decision by this Court.

## JURISDICTION AND VENUE

13.     The Nation brings this action under the Administrative Procedures Act 5. U.S.C. §§ 701-706 ("APA") and 25 U.S.C. § 465.  This Court has jurisdiction under 28 U.S.C. §1331, and may issue declaratory relief and reverse, delay, or postpone the Department's actions or otherwise issue an injunction under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and the APA §§ 701-706.

14.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).  The claims of the Nation in this action arise from the improvident action and decision by the Department

which threatens the sovereignty, authority and economic health of the Nation within and throughout the Nation's Treaty Territory.

15.     The Nation's Treaty Territory extends throughout eight of the eleven counties within the Northern District of Oklahoma.[1]   The improvident action and decision of the Department threatens a devastating impact on the Nation's long-established sovereignty, jurisdiction and governance throughout the Nation's Treaty Territory.

## PARTIES

16.     The Nation is a federally recognized Indian Tribe.   Although the Nation is sometimes referred to as the "Cherokee Nation of Oklahoma," under its Constitution its name is the "Cherokee Nation."   The Cherokee Nation possesses jurisdiction exclusive of any other Indian tribe or band over all tribal trust lands situated within the boundaries of the Nation's Treaty Territory.

17.     S.M.R. Jewell is the Secretary of the United States Department of the Interior and as such is responsible for its decisions and operations.  She is named in her official capacity.

18.     Kevin Washburn is the Director of the Bureau of Indian Affairs (the "BIA") and is the Acting Assistant Secretary for Indian Affairs for the United States Department of the Interior.  He is named in his official capacity.

19.     Robert Impson is the Eastern Oklahoma Regional Director of the Bureau of Indian Affairs, an agency of the United States Department of the Interior.  He is named in his official capacity.

## HISTORICAL FACTS

A.     The Cherokee Nation Treaty Territory

---

[1] The Nation's Treaty Territory includes land within Craig, Delaware, Mayes, Nowata, Ottawa, Rogers, Tulsa and Washington counties, all within the Northern District of Oklahoma.

5

20.    The Nation possesses rights of self-government which predate the formation of the United States and which were guaranteed by the United States in its treaties with the Nation, including the Treaty of December 29, 1835, 7 Stat. 478 (Proclamation, May 23, 1836) ("Treaty of New Echota"), reprinted in KAPPLER'S INDIAN LAWS AND TREATIES, V. 2 at 439-449, and the Treaty of July 19, 1866, 14 Stat. 799 (Proclamation August 11, 1866), reprinted in KAPPLER'S INDIAN LAWS AND TREATIES, V. 2 at 942-950 ("1866 Treaty").  See *Talton v. Mayes*, 163 U.S. 376, 380, 384 (1896).

21.    In 1835, the citizens of the Nation were removed to what was then Indian Territory under the Treaty of New Echota. The Nation acquired fee patent title to its new lands in 1838.  The Nation's lands were reduced to its present Treaty Territory size under the 1866 Treaty and by Agreement ratified by Congress by Act of March 3, 1893, ch. 209 27 Stat. 612, 640, reprinted in KAPPLER'S 1 at 484, 489 -492 § 10.

22.    Article 5 of the 1835 Treaty of New Echota guaranteed the Nation the right to self-governance, so long as consistent with the Constitution and laws enacted by Congress regulating trade with Indians. Article 13 of the 1866 Treaty reaffirmed and declared in full force all provisions of prior treaties not inconsistent with the provisions of the 1866 Treaty.

23.    The Nation adopted a written Constitution in 1827, and again in 1839, after removal to Indian Territory.  The Cherokee Nation maintained a government with an executive, legislative, and judicial branch over its domain in Indian Territory.

24.    The Treaty of 1866 expressly provides a mechanism whereby other tribes might be settled within Cherokee country:

> The United States may settle any civilized Indians, friendly with the Cherokees and adjacent tribes, within the Cherokee country, on unsurveyed lands east of 96E, <u>on such terms as may be agreed</u>

> upon by any such tribe and the Cherokees, subject to the approval
> of the President of the United States . . . .

Article 15 (emphasis added).

25.     Section 26 of the 1866 Treaty separately protects the right of the Cherokee Nation

to the "quiet and peaceable" possession of the Nation's Treaty Territory, "against the hostilities

of other tribes". In that Treaty provision, the United States expressly:

> guarantee[d] to the people of the Cherokee Nation the quiet and
> peaceable possession of their country and protection against
> domestic feuds and insurrections, and against hostilities of other
> tribes.   They shall also be protected against interruptions or
> intrusion from all unauthorized citizens of the United States who
> may attempt to settle on their lands or reside in their territory.

26.     The Nation shares a common federal legal history with the other four so-called

"Five Civilized Tribes" (the Chickasaw, Choctaw, Muscogee (Creek) and Seminole Nations)

("Five Tribes").   Between 1893 and 1906 Congress enacted a series of laws in order to force

allotment of tribal lands of the Five Tribes.   The Nation was, and is, a large tribe; there were

approximately 41,800 Cherokee citizens within the Nation's Treaty Territory at the time of

allotment in the early 1900's and there are now approximately 120,426 Cherokee citizens within

the Nation's Treaty Territory.

27.     After Oklahoma statehood in 1907, Department officials and employees

historically took the position that the Five Tribes had been terminated, refused to recognize tribal

governmental actions, refused to release tribal funds to Five Tribes governments, and insisted

that Five Tribes chiefs could only be appointed by federal officials for purposes of signing deeds

to tribal lands.

28.    The Nation's constitutional government structure has been in continual existence since its 1839 Constitution.   The Nation adopted a new Constitution in 1976[2] under the Nation's inherent sovereign authority.   Article XVI of the 1976 Constitution provides: "The provisions of this Constitution overrule and supersede the provisions of the Cherokee Nation Constitution enacted the 6th day of September 1839."   The Nation later adopted a new Constitution that replaced the 1976 Constitution in 2003[3].   The federal courts have long acknowledged the Cherokee Nation's Constitution and constitutional government.   *See, e.g., Wheeler v. U.S Department of the Interior, Bureau of Indian Affairs*, 811 F.2d 549 (10th Cir. 1987).

29.    In *Harjo v. Kleppe*, 420 F. Supp. 1110, 1129 (D.D.C. 1976), *aff'd sub nom, Harjo v. Andrus*, 581 F.2d 949 (D.C. Cir. 1978) the Department took the position that federal laws had stripped the Five Tribes of essentially all governmental authority.   After a detailed review of treaties and federal legislation concerning the Five Tribes, the federal district court concluded that the BIA had illegally engaged in "bureaucratic imperialism" in its dealings with the Creek Nation, and that the existence of the tribal governments had continued notwithstanding harsh federal legislative and administrative treatment.   The court noted in *Harjo* that its conclusion, that the 1906 Five Tribes Act continued indefinitely the existence of the tribe, has been "confirmed by each court that has examined the question."

B.    The UKB

30.    The UKB sought federal recognition in the 1930's in order to organize as a separate band under the OIWA, but were denied such recognition by the Department of Interior. This denial of recognition was based on an Opinion by the Solicitor of the Department that found

---

[2] The Constitution was drafted in 1975, but final adoption did not occur until 1976.  In Cherokee law, this Constitution is referred to as the "Constitution of 1975" or "1975 Constitution."

[3] This Constitution was drafted by Convention in 1999, but was not formally approved and adopted until 2003.  It is alternatively referred to as either the 1999 Constitution or the 2003 Constitution.  They are the same document

that the UKB was not "a recognized tribe or band" of Cherokee Indians as required by 25 U.S.C. § 503 of the OIWA because it was "neither historically nor actually a governing unit of the Cherokee Nation, but a society of citizens within the Nation with common beliefs and aspirations." Op. of July 29, 1937, reprinted in 1 Op. Sol. on Indian Affairs 774 (U.S.D.I. 1979). Thus, as of 1937, the Department of the Interior had determined that the Keetoowahs were not an Indian tribe within the meaning of the OIWA.

31.     In 1945, Acting Secretary of the Interior (later Associate Justice of the United States Supreme Court) Abe Fortas informed Congress that "[i]n 1937 the Keetoowah Indians requested permission to organize under section 3 of the Oklahoma Indian Welfare Act on the grounds that the society was, in effect, a recognized band of Indians residing in Oklahoma. The Department was compelled to decline this request because it seemed impossible to make a positive finding that the Keetoowah Indians were and are a tribe or band within the meaning of the Oklahoma Indian Welfare Act." Letter of Mar. 24, 1945 from the Acting Secretary to Chairman Jackson, Committee on Indian Affairs, *reprinted in* H.R. Rep. No. 79-447, at 2 (1945) and S. Rep. No. 79-978, at 3 (1946).

32.     In 1946, Congress specially authorized the UKB to organize as an Indian band under OIWA § 503. See Act of August 10, 1946, Pub. L. No. 79-715, sec. 1, 60 Stat. 976 ("*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Keetoowah Indians of the Cherokee Nation of Oklahoma shall be recognized as a band of Indians residing in Oklahoma within the meaning of section 3 of the Act of June 26, 1936"). The Act did not create or recognize a reservation for the UKB nor did it give the UKB any land.

33.     Pursuant to the 1946 Act, by a vote of 1,414 in favor and 1 against, the UKB on October 3, 1950 adopted a constitution and bylaws under section 3 of the OIWA, 25 U.S.C. § 503.

34.     The Department has consistently determined that UKB has never had a reservation, as set out in a decision of the Assistant Secretary for Indian Affairs, issued April 17, 1987.  The Assistant Secretary there advised UKB that the Department was denying an application to place land into trust on the grounds that the land at issue was within the Cherokee Nation and, under the regulations, could not be placed into trust without the Cherokee Nation's consent. The Assistant Secretary, in this letter, reasoned that:

> The first issue to be addressed is whether the United Keetoowah Band has a reservation as that term is used in the land acquisition regulations.  We believe it is clear that they do not.  The regulations defined the term "Indian reservation," in the State of Oklahoma, "as that area of land constituting the former reservation of the tribe as defined by the Secretary."  25 C.F.R. 151.2(f).  The United Keetoowah Band has never had a reservation in Oklahoma, and the Band has never exercised independent governing authority over any of the Cherokee Nation's reservation lands.  Unlike the Creek Tribal Towns, historically, the Keetoowahs were considered to be merely a society since they never exercised any governmental authority.  1 *Op. Sol. Indian Affairs* 774 (U.S.D.I.1979). Because they lacked attributes of a political body, the legislation referenced above [Act of August 10, 1946, 60 Stat. 976] was required. *See Senate Report No. 79-978*.  While the legislation recognized the society as a Band for the purposes of organizing under the Oklahoma Indian Welfare Act, it did not create or set aside a reservation for the Band.  Neither did it purport to give the newly acknowledged Band any authority to assert jurisdiction over any lands belonging to the Cherokee Nation. (emphasis added)

35.     The Department has reiterated this position on multiple occasions, including in letters dated December 15, 1988, and February 1, 1989, from the Acting Regional Director of the Muskogee Regional Office (now known as the "Eastern Oklahoma Regional Office") to UKB, denying other UKB applications to have the Secretary acquire land in trust for the UKB.

36.     The conclusions that the Nation's consent is required before the Department can take land within its Treaty Territory into trust for another tribe or band, and that the Nation has exclusive jurisdiction over Indian lands within its Treaty Territory have also been reached by the courts on multiple occasions.  In *United Keetoowah Band v. Sec'y of the Interior*, No. 90-C-608-B (N.D. Okla. May 31, 1991), the UKB challenged, *inter alia*, the Department's conclusion that because the Nation was recognized as the sovereign over lands within the Cherokee Treaty Territory, the Nation's consent was required for any application by the UKB to have its land acquired in trust status.  *Id.* at 1, 2.  In holding that the Nation was an indispensable party to the case, the district court examined the history and relative roles of the UKB and the Nation and found that: (1) the BIA "has determined that the subject lands of the old [Nation's Treaty Territory] are under the jurisdiction of the new Cherokee Nation, not the UKB," *id.* at 6; (2) "[a]s to the old [Nation's Treaty Territory] lands, the Secretary has recognized one sovereign (Cherokee Nation of Oklahoma) over another (UKB)," *id.* at 6; (3) "[p]rior case law indicates that neither Congress, the Secretary of the Interior, nor the courts have made a distinction between the Cherokee Nation at the time of Oklahoma statehood and the current Cherokee Nation of Oklahoma," *id.* at 12; and (4) "[t]he federal government has long recognized the special interests of the Cherokee Nation in these lands [i.e., "all 'Indian Country' within its former reservation"] . . ." *Id.* at 10.

37.     The same conclusion was reached by the court in *Buzzard v. Oklahoma Tax Commission*, No. 90-C-848-B (N.D. Okla. Feb. 24, 1992), *aff'd*, 992 F.2d 1073 (10th Cir. 1993).  In that case, UKB claimed that it was a successor to the Nation and thus "heir to the unallotted lands within the original [Nation's Treaty Territory]," and that it was entitled to exercise tribal

sovereignty over those lands, so that they were "transform[ed] into Indian country upon the UKB's purchase in fee." *Id.* at 7. The district court rejected this claim, stating that:

> The UKB . . . offers no authority to support its claim that it is heir to the original Cherokee Indian Reservation. The Act of August 10, 1946 [under which UKB was allowed to organize] simply recognizes the UKB as a "band of Indians residing in Oklahoma"; it does not set aside a reservation for the UKB or acknowledge the UKB's jurisdiction over the original Cherokee Indian Reservation. Also, while the Act's recognition of the UKB permitted the UKB to incorporate under Section 3 of the [Oklahoma Indian Welfare Act], nothing in Section 3 creates or recognizes the UKB's claim to the original Cherokee Indian Reservation.

*Id.* at 8 (emphasis added). The court further found that the United States has consistently recognized that the lands within the Nation's Treaty Territory are under the jurisdiction and control of the Nation, not the UKB:

> Contrary to the UKB's claim, the Secretary of the Interior has determined that the lands within the original Cherokee Indian Reservation are not under the jurisdiction of the UKB . . . . [T]he Secretary has recognized that the original Cherokee Indian Reservation is the former reservation of the Cherokee Nation, not the UKB . . . .

*Id.* at 8-9 (citation omitted). Based on these factors, the court concluded "that UKB has failed to show any treaty or Congressional act establishing UKB's 'inherited' right or claim to reservation land within the boundaries of the [Nation's Treaty Territory]." *Id.* at 9 (footnote omitted). The Tenth Circuit affirmed the district court's decision. 992 F.2d 1073 (10th Cir. 1993).

38.     The Court reached the same conclusion when the UKB challenged the Nation's authority to enforce its tobacco tax and licensing requirements on individual allotments that the UKB was using for smokeshops. *United Keetoowah Band v, Mankiller*, No. 92-C-585-B (N.D. Okla. 1993), aff'd 2 F3d 1161 (10th Cir. 1993). The district court held that the UKB's claim that its smokeshops were not subject to the Nation's authority "directly attack[ed] the

sovereignty of the Cherokee Nation over the subject land . . ." 1993 WL 307937 at **4.  The court further found that it had "previously decided that the Cherokee Nation is the only tribal entity with jurisdictional authority in Indian Country within the Cherokee Nation," and that it had "previously determined in [the two] prior cases that the Cherokee Nation's sovereignty is preeminent to that of the UKB in Cherokee Nation Indian Country."  *Id.* at **2.  The court concluded that, given the court's two prior holdings on the superiority of the Nation's interests and jurisdiction, principles of res judicata and collateral estoppel barred UKB from again raising the merits of its successor-in-interest claim.  *Id.* at **5.  The Tenth Circuit affirmed.  1993 WL 307937 (10th Cir. Aug. 12, 1993).

### C.  The UKB Corporation

39.      Pursuant to the 1946 Act, the UKB adopted its 1950 constitution and bylaws under the OIWA.  On the same date, the UKB separately adopted a corporate charter under the same section of the OIWA, forming the UKB Corporation.  The UKB and the UKB Corporation are not one and the same; they are distinctly separate legal entities.  On information and belief, the UKB Corporation has no board, has never met as a corporate body, and has not taken any corporate action requesting that the subject land be taken into trust.

### D.  The Subject Tract

40.      The UKB owns the Subject Tract in unrestricted fee status (2011 Decision at 5), but the 76-acres have never been taken into trust by the federal government for the UKB, UKB Corporation or any other federally recognized tribe or tribal corporation.

41.      The Subject Tract is located within the Nation's Treaty Territory.  This parcel is in an area that has long been recognized as within the exclusive boundaries of the Nation's Treaty Territory.  BIA trust acquisition regulations provide that, for tribes situated in Oklahoma,

the term "Indian reservation" means "that area of land constituting the former reservation of the tribe as defined by the Secretary." 25 C.F.R. § 151.3(f).

## GENERAL ALLEGATIONS

### A.    UKB Trust Application

42.    The UKB submitted an application to the BIA on or about June 9, 2004, requesting that the Subject Tract be acquired in trust for the benefit of the UKB.   The Department never took final action on the original 2004 application.

### B.    2011 Decision

43.    On May 24, 2011, the Regional Director issued the 2011 Decision approving the amended trust acquisition request for the UKB Corporation, contingent upon the UKB meeting the title requirements identified in the Region's Letter to the UKB dated February 23, 2011. Decision at 2 and 10.

44.    The Regional Director's 2011 Decision to recommend taking the Subject Tract into trust was unlawful, unwarranted by the facts, and in excess of its authority in that the Department violated its own regulations and applicable law, abused its discretion, and acted arbitrarily and capriciously by making its final determination to take the land into trust in the absence of facts and law warranting the decision, all without observance of procedures required by law.

45.    By reason of the Department's unwarranted and unlawful decision to take the Subject Tract into trust, the Nation has suffered legal wrong and been adversely affected and aggrieved by the agency action.

14

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**VIOLATION OF REGULATORY REQUIREMENTS REGARDING CHEROKEE NATION CONSENT FOR LANDS TAKEN INTO TRUST WITHIN THE NATION'S FORMER RESERVATION"**

(Unlawful Exercise of Trust Authority, 25 U.S.C. § 465)
(Administrative Procedures Act, 5 U.S.C. §§ 702, 706)
(Declaratory Judgment, 28 U.S.C. § 2201)

46.     The Nation realleges the allegations set forth in Paragraphs 1 through 45 and same are incorporated as if fully set forth herein.

47.     The IRA, 25 U.S.C. § 465, and the OIWA, 25 U.S.C. § 501, confer upon the Secretary the discretionary authority to take land into trust.

48.     The Secretary's discretionary authority is subject to compliance with the Department's Land Acquisition Regulations, 25 C.F.R. Part 151, which were promulgated to implement both the IRA and the OIWA.  25 C.F.R. § 151.5 ("land may be acquired in trust status for an individual Indian or a tribe in the State of Oklahoma under [25 U.S.C. § 465], if such acquisition comes within the terms of this part [25 C.F.R. § 151]").

49.     Section 151.8 of the Land Acquisition Regulations states that an Indian tribe "may acquire land in trust on a reservation other than its own only when the governing body of the tribe having jurisdiction over such reservation consents in writing to the acquisition. . . ."

50.     The 2011 Decision acknowledges that "[t]he Bureau has consistently recognized this area as the "former reservation of the CN." Id. at 6.

51.     The 2011 Decision states that "the Assistant Secretary withdrew his conclusion concerning the status of the UKB as a successor in interest to the "historic Cherokee Nation," stating that his prior conclusion on this issue was unnecessary for purposes of his decision.

Regardless, in his 2009 Decision, the Assistant Secretary found that he need not decide whether this is an on-reservation or off-reservation acquisition because the result is the same under both analyses. Because the interest of the UKB in the "historic Cherokee nation," if any, has not been finally determined, we have considered herein the off-reservation factors." Id. at 9.

52.     The 2011 Decision further states that "the Assistant Secretary specifically concluded that the Cherokee Nation of Oklahoma (CN) 'does not need to consent to the acquisition in trust of the UKB's land. It is only necessary that the Department consult with the CN. The Department satisfied this requirement when it solicited comments from the CN.'" Id. at 3.

53.     There is no lawful basis for the 2011 Decision's conclusion that the consent requirement in 25 C.F.R. § 151.8 does not apply to land taken into trust within the Cherokee Nation former reservation, or that it has been waived.

54.     For the foregoing reasons, the Department's decision to take the land into trust was contrary to law, arbitrary, capricious, and an abuse of discretion under the APA.

WHEREFORE, the Nation prays as hereinafter set forth

SECOND CLAIM FOR RELIEF

**ABSENCE OF STATUTORY AUTHORITY FOR DEPARTMENTAL ACQUISITION OF LAND INTO TRUST ON BEHALF OF TRIBAL CORPORATION**

(Unlawful Exercise of Trust Authority, 25 U.S.C. § 501, 503)
(Administrative Procedure Act, 5 U.S.C. §§702, 706)
(Declaratory Judgment, 28 U.S.C. § 2201)

55.     The Nation  realleges the allegations set forth in Paragraphs 1 through 54 and same are incorporated as if fully set forth.

56.     Section 151.3 of the Land Acquisition Regulations states: "Land not held in trust or restricted status may only be acquired for an individual Indian or a tribe in trust status when

such acquisition is authorized by an act of Congress." In addition, section 151.10(a) of the Regulations states that in, evaluating a request for a trust acquisition, the Secretary will consider "the existence of statutory authority for the acquisition and any limitations contained in such authority." 25 C.F.R. § 151.10(a). In accordance with this provision, the 2011 Decision states that "[l]and may be acquired in trust by the United States Government for Indians and Tribes only when there is statutory authority to do so." Id. at 2.

57.     The 2011 Decision indicates that the Subject Tract will be taken into trust on behalf of the UKB Corporation. The 2011 Decision does not claim that the Secretary possesses express authority from Congress to acquire land in trust status for the UKB Corporation. Nonetheless, the Decision asserts that "Section 3 of the OIWA, 25 U.S.C. § 503, implicitly authorizes the Secretary to take land into trust for the UKB Corporation." 2011 Decision at 2 (emphasis added). To support this assertion, the Regional Director cites to a September 10, 2010, decision by the Assistant Secretary and clarified by the Assistant Secretary's January 21, 2011 letter to the UKB. Id.

58.     The Nation's appeal of the 2011 Decision was pending before the Interior Board of Indian Appeals until January 6, 2014 when the IBIA dismissed the appeal. *See Cherokee Nation v. Eastern Oklahoma Regional Directo*r, No. IBIA 11-122 (appeal docketed July 12, 2011).

59.     The January 6, 2014 IBIA dismissal leaves the 2011 Decision intact as a final decision, but recognizes the treaty concerns raised by the Cherokee Nation in a companion case before this Court (*Cherokee Nation, et al. v. S.M.R. Jewell, et al.*, 12-cv-493-GKF-TLW, United States District Court for the Northern District of Oklahoma). In its dismissal order, the IBIA notes that "it is clear that Appellant [Cherokee Nation] is challenging the Assistant Secretary's

decision to acquire the Keetoowah Casino Property in trust on the same treaty grounds that Appellant presents in this appeal.  Because the treaty issue is part of the parallel litigation before the Federal district court in the appeal of the Assistant Secretary's 2012 Casino Decision, we abstain from considering the issue." *See* Order Dismissing Appeal, 58 IBIA 153 (attached as Exhibit 1 to this Complaint).

60.     Neither section 1 nor 3 of the OIWA authorizes the defendants to take land into trust for an OIWA corporation.  The only authority granted to the Secretary to take land into trust under the OIWA for any entity is set forth expressly and in detail in section 1 of the OIWA, 25 U.S.C. § 501, and that section does not authorize trust land acquisitions for corporations.  Section 3 of the OIWA, 25 U.S.C. § 503, does not authorize the Secretary to take land into trust for any entity, tribal or corporate.  The Secretary's assertion that he possesses implied authority from the terms of UKB's corporate charter and from OIWA Section 3's "privileges and rights" provision is contrary to law.

61.     The Department's land acquisition regulations do not authorize one entity to apply to have land taken into trust for another entity.  The Department's land acquisition regulations do not authorize the Secretary to take lands into trust for an entity which does not possess the lands in fee title.  The Regional Director's decision to acquire lands owned in fee by the UKB Band in trust for the UKB Corporation is thus contrary to law.

62.     For the foregoing reasons, the defendants are without authority to acquire the Subject Tract in trust on behalf of the UKB Corporation, and the Regional Director's 2011 Decision to do so is arbitrary and capricious, an abuse of discretion and contrary to law under the APA.

WHEREFORE, the Nation prays as hereinafter set forth.

THIRD CLAIM FOR RELIEF

**VIOLATION OF REGULATORY REQUIREMENTS REGARDING
JURISDICTIONAL CONCERNS**

(Unlawful Exercise of Trust Authority, 25 U.S.C. § 465)
(Administrative Procedure Act, 5 U.S.C. §§702, 706)
(Declaratory Judgment, 28 U.S.C. § 2201)

63.     The Nation realleges the allegations set forth in Paragraphs 1 through 62 and

same are incorporated as if fully set forth.

64.     Section 151.10(f) of the Land Acquisition Regulations requires the Department to

consider "jurisdictional problems and potential conflicts of land use which may arise" from any

proposed trust acquisition. 25 C.F.R. § 151.10(f).

65.     The 2011 Decision acknowledges and states that the BIA Eastern Oklahoma

Region "twice previously concluded that the potential for jurisdictional problems between the

Cherokee Nation and the UKB is of utmost concern and weighed heavily against approval of the

acquisition." 2011 Decision at 7.   Despite the Regional Director changing his position to

approval of the UKB trust acquisition of the Subject Tract because of clear direction from the

Assistant Secretary to do so, the Regional Director indicates its continuing concern about

jurisdictional conflicts if the land within the Cherokee Nation is taken into trust for the UKB or

UKB Corporation.  "As the Bureau office closest to tribal affairs in northeastern Oklahoma, the

Eastern Oklahoma Region remains concerned that jurisdictional conflicts will arise between the

UKB and CN if property is placed into trust for the UKB within the former reservation

boundaries of the Cherokee Nation." *Id.*

66.     Even though the BIA Eastern Oklahoma Regional Office concluded the proposed

acquisition of the Subject Tract in trust for the UKB would result in serious jurisdictional

19

conflicts between the Nation and the UKB, the Regional Director ignored the Region's own findings in agreeing to place the Subject Tract into trust. The Regional Director was so directed by the Assistant Secretary and the 2011 Decision notes "[t]he Assistant Secretary's findings and conclusions on this [jurisdictional conflicts] issue are binding on the Region." 2011 Decision at 8. The Department's determination as to jurisdictional conflicts is arbitrary, capricious, and an abuse of discretion under the APA.

WHEREFORE, the Nation prays as hereinafter set forth.

<center>FOURTH CLAIM FOR RELIEF</center>

**<center>VIOLATION OF REGULATORY REQUIREMENTS REGARDING<br>NEED FOR LAND</center>**

<center>(Unlawful Exercise of Trust Authority, 25 U.S.C. § 465)<br>(Administrative Procedure Act, 5 U.S.C. §§702, 706)<br>(Declaratory Judgment, 28 U.S.C. § 2201)</center>

67.     The Nation realleges the allegations set forth in Paragraphs 1 through 66 and same are incorporated as if fully set forth.

68.     Section 151.10(b) of the Trust Acquisition Regulations mandates that the Department consider the "need" of the UKB for land to be taken into trust on its behalf.

69. The 2011 Decision notes that "[t]he Assistant Secretary's 2009 Decision found that the UKB has no land in trust and concluded that the UKB has a need for this land to be taken in trust. The Assistant Secretary's Decision is binding on the Region." 2011 Decision at 5.

WHEREFORE, the Nation prays as hereinafter set forth.

<center>FIFTH CLAIM FOR RELIEF</center>

**<center>VIOLATION OF REGULATORY REQUIREMENTS REGARDING<br>IMPACT ON LOCAL GOVERNMENTS AND<br>THE ABILITY OF BIA TO PROVIDE SERVICES</center>**

(Unlawful Exercise of Trust Authority, 25 U.S.C. § 465)
(Administrative Procedure Act, 5 U.S.C. §§702, 706)
(Declaratory Judgment, 28 U.S.C. § 2201)

70.     The Nation realleges the allegations set forth in Paragraphs 1 through 69 and same are incorporated as if fully set forth.

71.     Section 151.10(g) of the Land Acquisition Regulations requires the Department to consider "whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of land in trust status."   Similarly, section 151.10(e) of the Regulations requires the Secretary to consider "the impact on the state and its political subdivisions resulting from the removal of the land from the tax rolls."  *Id.* § 151.10(e).

72.     The 2011 Decision finds that the proposed trust acquisition of the Subject Tract for the UKB Corporation is within the Cherokee Nation's Treaty Territory.  The 2011 Decision further states:

> The Region's prior decisions stated that the acquisition of the subject property into trust would create a need for Bureau law enforcement services, tribal court services, and realty services, and that the Region had no funds in its budget to provide these services. The Region again expresses its concern that the Region will not have the necessary funds to discharge the duties that will arise as a result of this acquisition. However, the Assistant Secretary has previously rejected this concern as unsubstantiated and insignificant. In his 2009 Decision, the Assistant Secretary stated: "Because the [former] Assistant Secretary found [in his 2008 Directive that] the BIA could discharge the duties associated with this trust acquisition and because the Regional Director has not substantiated her decision, the [former] Assistant Secretary's finding stands." Therefore, consistent with the Assistant Secretary's 2008 Directive and 2009 Decision, the BIA can discharge its duties in connection with this acquisition.

2011 Decision at 8.

73.     The Cherokee Nation has provided and continues to provide health, education, law enforcement and social services to all Indian people and all Indian country within the Nation's Treaty Territory.  As the 2011 Decision states, all BIA programs within the Nation's

Treaty Territory, and all associated funding for such programs, have already been transferred to the Nation pursuant to a self-governance compact under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450, et seq., 25 C.F.R. pt. 900 ("ISDA)", and as a consequence the Tahlequah BIA Regional Office (which previously administered such programs) has been closed. 2011 Decision at 8.

74.     Under Cherokee Nation law, UKB members are eligible to be members of the Nation and are eligible for governmental services (including Federal services) provided by the Nation through its ISDA programs. But the 2011 Decision states that the UKB Band "would likely reject the authority" of the Nation to provide services formerly provided by the BIA and now provided by the Nation. 2011 Decision at 8. If the Subject Tract is taken into trust, the UKB will likely seek additional funds from the BIA, the Indian Health Service, the Department of Justice and other federal agencies to provide services to UKB members who are otherwise eligible for services from the Nation. Any such federal funds obtained by UKB threaten to diminish the funds that would be provided to the Nation and to degrade the ability of the Nation to provide services to all Indians on the Nation's Treaty Territory. Such payments to UKB also would result in unnecessary and duplicative costs to provide the same services already being provided by the Nation, to the detriment of the intended beneficiaries of such services. The Department's failure to consider the impact of the proposed trust acquisition on the Nation and on its continued ability to receive funds under the Indian Self-Determination Act and to provide services under that Act to Indians on the Nation's Treaty Territory was arbitrary and capricious, an abuse of discretion and contrary to law under the APA.

WHEREFORE, the Nation prays as hereinafter set forth

22

SIXTH CLAIM FOR RELIEF

**FAILURE TO APPLY *CARCIERI***

(Unlawful Exercise of Trust Authority, 25 U.S.C. § 465)
(Declaratory Judgment, 28 U.S.C. § 2201)

75.     The Nation realleges the allegations set forth in Paragraphs 1 through 74 and same are incorporated as if fully set forth.

76.     The UKB indisputably became a legal entity on October 3, 1950, over 16 years past the Supreme Court's 1934 deadline.  Therefore, the Secretary is barred by operation of law from granting its fee-to-trust application.  It is true that a tribe organized under the OIWA may be granted a corporate charter which conveys to it, inter alia, any other rights or privileges secured to an organized Indian tribe under the IRA.  Oklahoma Indian Welfare Act, § 3, 49 Stat. 1967 (codified a t25 U.S.C. § 503).  But an "organized Indian tribe" under the IRA having the same characteristics as UKB - i.e., a tribe organized  after 1934 - would not be eligible to receive land in trust under 25 U.S.C. §  465, as construed by *Carcieri*.  In other words, section 3 of the OIWA does not grant OIWA-organized entities any rights greater than IRA-organized entities.

77.     Since the UKB was not federally recognized until 1946, neither the Secretary nor her subordinate Regional Director can, as a matter of law, invoke discretionary authority under 25 U.S.C. § 465 to accept the Subject Tract into trust under *Carcieri*.

WHEREFORE, the Nation prays as hereinafter set forth.

EIGHTH CLAIM FOR RELIEF

**VIOLATION OF TREATY RIGHTS**
(Administrative Procedures Act, 5 U.S.C. §§ 702, 706)

78.     The Nation realleges the allegations set forth in Paragraphs 1 through 77 and same are incorporated as if fully set forth.

23

79.     The Treaty provisions which granted the Reservation to the Cherokee Nation to be held by the Nation as a whole, and which reconfirm the Cherokee Nation's sovereign authority and rights of self-government— rights which are to be protected against the "intrusion" of all unauthorized citizens without Cherokee Nation consent—mean that the Cherokee Nation possesses exclusive sovereign authority over trust lands within the boundaries of the Nation's Treaty Territory and holds a veto power over the entry of other tribes upon such lands.

80.     The 2011 Decision violates the Cherokee Nation's right to exclusive sovereign authority over the Nation's Treaty Territory, as guaranteed by the 1866 Treaty, by purporting to provide conflicting territorial jurisdiction to the UKB Band over land within the Nation's Treaty Territory.

81.     The 2011 Decision violates the Cherokee Nation's right to "peaceable possession" of the Nation's Treaty Territory, and the right to be protected against "hostilities of other tribes" and against "intrusion" by others, as guaranteed by the 1866 Treaty, by purporting to acquire the gaming parcel in trust for the UKB Corporation on the Nation's Treaty Territory without the consent of the Cherokee Nation, thereby impairing the Cherokee Nation's exclusive sovereign authority over the Nation's Treaty Territory.

82.     The 2011 Decision violates the Cherokee Nation's right to "the quiet and peaceful possession of their country and protection . . . against hostilities of other tribes," as guaranteed by the 1866 Treaty, by acquiring land within the Nation's Treaty Territory in trust for the UKB Corporation, to be governed (as the Secretary sees it) by the UKB Band which, among other hostile acts, has sought to divert the distribution of federal funds from the Cherokee Nation, thus threatening the Cherokee Nation's peaceful possession of its country within the meaning of the 1866 Treaty.

83.     Because the 2011 Decision violates the Cherokee Nation's rights under the 1866 Treaty in multiple ways, the Decision is arbitrary and capricious, an abuse of discretion and contrary to law under the APA.

WHEREFORE, the Nation prays as hereinafter set forth.

### NINTH CLAIM FOR RELIEF

### INJUNCTION

### (Fed.R.Civ.P. 65)

84.     The Nation realleges the allegations set forth in Paragraphs 1 through 83 and same are incorporated as if fully set forth.

85.     The Subject Tract cannot be taken into trust because the Nation has not given consent as required by 25 C.F.R. 151.8.

86.     The Assistant Secretary's conclusion, imposed upon the Regional Director, that the Nation's consent is not required because the Nation and UKB share the Nation's Treaty Territory is inconsistent with previous Department determinations and developed case law.

87.     Since the UKB was not federally recognized until 1946, the Secretary has no authority under 25 U.S.C. § 465 to accept the Subject Tract into trust. See *Carcieri.* Moreover, even if the Secretary had such authority, he could not properly exercise it here because the prerequisites to such a discretionary acceptance of land into trust have not occurred.

88.     No lawful authority exists under which the Secretary can accept the Subject Tract into trust on behalf of the UKB or the UKB Corporation.

89.     Nation is entitled to injunctive relief temporarily, preliminarily, and permanently enjoining and prohibiting the Secretary from accepting the Subject Tract into trust since there exists no legal authority empowering her to do so.

90.     If the Secretary is not enjoined from taking the Subject Tract into trust, the Nation will be irreparably harmed as it may or will lose the opportunity for judicial review of the Secretary's decision.

91.     Further, if the Secretary is not enjoined, or does not voluntarily agree to stay taking the Subject Tract into trust, the Nation will be irreparably harmed by the improvident action and decision by the Department which threatens the sovereignty, authority and economic health of the Nation within and throughout its Treaty Territory.

92.     Absent a voluntary stay, by reason of the Department's and Regional Director's imminent anticipated action to take the Subject Tract into trust for the UKB Corporation, the Nation is entitled to immediate injunctive relief to stay and annul the decision and to cause the Department to deny the trust application.

<div align="center">**PRAYER FOR RELIEF**</div>

WHEREFORE, the Cherokee Nation respectfully requests that the Court enter judgment in its favor and against the Department as follows:

A.     Declaring that the UKB is not a "successor in interest" to the Nation's former reservation or Treaty Territory and that the Nation's consent is required for taking land into trust within the Nation's former reservation;

B.     Declaring that the Department's 2011 Decision to take the Subject Tract into trust status is in violation of the treaties entered into between the Nation and the United States;

C.     Declaring that the 2011 Decision to acquire the Subject Tract in trust for the UKB Corporation is arbitrary, capricious, an abuse of discretion and contrary to law;

D.     Declaring that the Department would act in excess of its legal and regulatory trust authority if it took the Subject Tract into trust;

E.      Enjoining the Department, its agents, employees, successors and assigns in office

from taking any action to effectuate or implement the 2011 Decision to acquire the subject land

in trust for the UKB Corporation or the UKB;

F.      Awarding the Nation costs and reasonable attorneys' fees to the extent permitted

by law; and

G.      Granting such other and further relief as the court deems just and proper.


                                              Respectfully submitted,

                                    By:    _____
                                              David McCullough, OBA No. 10898
                                              S. Douglas Dodd, OBA No. 2389
                                              Doerner, Saunders, Daniel
                                               & Anderson, L.L.P.
                                              Two West Second Street, Suite 700
                                              Tulsa, Oklahoma 74103-3117
                                              Telephone:  (918) 582-1211
                                              Facsimile:  (918) 925-5316
                                              dmccullough@dsda.com
                                              sddodd@dsda.com

                                              and

                                              Todd Hembree
                                              Attorney General
                                              Cherokee Nation
                                              P.O. Box 948
                                              Tahlequah, OK  74465-0948
                                              Tel:  (918) 456-0671
                                              Fax:  (918) 458-5580
                                              todd-hembree@cherokee.org


                                              *Attorneys for Cherokee Nation*